UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JERRY LEWIS MITCHELL,

                Petitioner,                Case No. 2:20-cv-226

v.                                     Honorable Janet T. Neff

ERICA HUSS,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

         This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jerry Lewis Mitchell is incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  On May 15, 2017, Petitioner pleaded guilty in the Wayne County Circuit Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317, and felony-firearm, in violation of Mich. Comp. Laws § 750.227b.  On June 9, 2017, the court sentenced Petitioner to a prison term of 19 to 40 years for murder to be served consecutively to a sentence of 2 years for felony-firearm.

         On November 2, 2020, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

    I.      Trial counsel was not effective during a critical stage of Petitioner's criminal process.  Trial counsel during the plea stage failed to inform Petitioner that because Petitioner was on parole [when he committed the crimes] he would not receive any jail credit towards the felony firearm conviction.

    II.     Petitioner plea was induced under false pretense which caused him to abandon his constitutional rights secured in criminal trials.  Petitioner understood the plea offer to include jail credit to go towards Petitioner's felony-firearm conviction, which was agreed upon in open court during the

plea phase, which led Petitioner to forego trial, but the jail credit was withdrawn at the sentencing phase.

(Pet., ECF No. 1, PageID.6–7.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

The facts that Petitioner admitted as support for his guilty plea are sparse.  Petitioner admitted that, on April 2, 2016, he shot Michael Alexander Scott Gray, with the intent to commit murder or do great bodily harm, and as a result, Gray died.  (Plea Tr., ECF No. 6-10, PageID.290–291.)  No additional facts were required to support Petitioner's conviction for second-degree murder.  Nonetheless, to fully understand the benefit of Petitioner's plea bargain, it is helpful to gain a deeper understanding of the facts underlying the charges against Petitioner.[1]

The charges against Petitioner were based on two separate criminal incidents.  The first incident occurred on March 31, 2016.  On that day, Petitioner visited an auto body shop on Gable Street in Detroit.  The shop was owned by Antonio Porter.  Antonio and his brother Keithon Porter were working there when Petitioner arrived.  Petitioner was acquainted with Keithon.

Antonio had opened a door to the outside to see if Keithon was driving a vehicle into the shop as directed.  When Antonio completed that task and turned around, Petitioner shot him several times.  Petitioner also shot at the vehicle Keithon was driving into the shop.  Antonio

---

[1] These facts are taken from the preliminary examination transcripts (ECF Nos. 6-2, 6-3) and from the transcript of the hearing on Petitioner's motion to sever the two incidents into separate trials (ECF No. 6-7).

was hit nine times.  After he was treated at the hospital, Antonio discovered that the money, credit cards, and identification that were in his pocket were gone.  Antonio identified Petitioner from a photo array.

Keithon was also shot nine times.  He knew Petitioner before the incident, so he was able to identify Petitioner for the police when he had recovered sufficiently a few days later. Keithon reported that Petitioner pulled out a second gun and started shooting anew after he had emptied the first gun.  The police found shell casings that came from two different guns.

Two days after Petitioner shot the Porters, Michael Gray's cousin found him in the doorway of a house where Gray sold marijuana.  Gray had been shot several times.  Police found several shell casings and a few cell phones in the house.  One pocket of Gray's jeans pockets had been pulled inside out, as if someone had taken something from that pocket.  One of the phones found at the scene was Petitioner's.  Petitioner's DNA was identified on the turned-out jeans pocket of the victim.  The same .40 caliber handgun fired the shell casings found at Antonio Porter's body shop and the house where Michael Gray was found.

With respect to the March 31 incident, Petitioner was charged with two counts of assault with intent to murder for shooting the Porters, armed robbery of Antonio Porter, being a felon in possession of a weapon, and using a firearm during the commission of a felony.  With respect to the April 2 incident, Petitioner was charged with open murder, being a felon in possession of a weapon, and use of a firearm during the commission of a felony.  Petitioner was charged as a fourth habitual offender.

The consequences of conviction were dire.  Petitioner faced the prospect of life imprisonment with respect to the murder, assault with intent to murder, and armed robbery charges. If the jury were convinced that the out-turned pocket was evidence of attempted larceny, Petitioner

3

could have been found guilty of felony-murder which would carry a mandatory sentence of life imprisonment without the possibility of parole.  Additionally, even if Petitioner were not found guilty of felony-murder, as a fourth habitual offender, Petitioner faced a mandatory minimum sentence of 25 years if he were convicted of any of the main offenses.  Moreover, because the murder of Michael Gray occurred in a criminal transaction separate from the criminal transaction that included the assaults and armed robbery of the Porters, the sentences for those offenses from the separate transactions could have been consecutive.  And, finally, the sentences within each transaction would have been consecutive as between the felony firearm charges and the other charges.

      The evidence was sufficiently overwhelming that, on the eve of the second-scheduled trial date, Petitioner's first trial counsel opined that he really had no defense to offer on Petitioner's behalf other than an argument that the prosecutor's evidence did not suffice.  The alibi witnesses Petitioner identified did not support the alibi and would not speak with counsel.  Counsel advocated for Petitioner to accept a plea offer.  The prosecutor had offered Petitioner dismissal of all other counts and the habitual offender enhancement in exchange for Petitioner's guilty plea to the second-degree murder of Michael Gray—with a sentence agreement for 20 to 40 years—and the associated felony-firearm count—with a mandatory consecutive sentence of 2 years.  Petitioner would not take the plea and, dissatisfied with counsel, Petitioner sought, and was allowed to retain, new counsel.

      As the third-scheduled trial date approached, Petitioner again rejected the plea offer.  On the morning of trial, however, he agreed to accept the offer and enter the plea.  The terms were generally the same as those identified above; but the minimum on the murder sentence was reduced to nineteen years.

There was nothing in the plea offer that related to credit for the time Petitioner had already served.  Petitioner had signed all of the paperwork to go forward with the plea without any reference to credit for time served.  (Settlement Offer and Notice of Acceptance, ECF No. 6-13, PageID.360.)  Petitioner does not claim that his counsel or the prosecutor made any representation with regard to credit for time served.  Petitioner states only that "[m]y trial attorney failed to inform me that if I was on parole at the time of this plea that I would not receive jail credit because I was on parole at the time of the plea."  (Affid. of Pet'r, ECF No. 6-13, PageID.340.)

The only affirmative statements regarding credit for time served were made by the judge at the plea hearing.  The trial judge explained that the sentence agreement was 19 to 40 years for second-degree murder and that the 2-year sentence for felony-firearm was mandatory and that the two sentences would be consecutive.  Then, the judge stated:

> So, for however long you've been in jail awaiting sentence [sic], those days will go to the two years for the mandatory felony firearm count and not the nineteen to forty.

(Plea Tr., ECF No. 6-10, PageID.289.)  It is on that sentence that the entirety of Petitioner's habeas challenge rests.  Petitioner claims that he "relied on the trial court's promise at the plea to give jail credit towards the felony firearm charge."  (Affid. of Pet'r, ECF No. 6-13, PageID.340.)

When Petitioner was sentenced, however, he did not receive any credit because such credit was not permitted.  At the time Petitioner committed the March 31 and April 2 offenses, he was on parole from sentences imposed on January 18, 2011, in other Wayne County Circuit Court prosecutions.  The Michigan Department of Corrections Offender Tracking Information System shows that at the time of the new offenses, Petitioner had not yet been discharged from a sentence of 11 months to 5 years imposed for third-degree fleeing a police officer on September 10, 2009; a sentence of 1 year, 11 months to 5 years imposed for carrying a concealed weapon on June 1, 2010; and a sentence of 1 year, 5 months to 15 years imposed for second-degree home

invasion on February 13, 2009. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?
mdocNumber=752248 (visited July 18, 2021).

Because Petitioner was on parole when he committed the offenses, he was not
eligible for credit against his sentence for the time he was detained following his arrest and before
his sentence. Michigan Compiled Laws § 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has
> served any time in jail prior to sentencing because of being denied or unable to
> furnish bond for the offense of which he is convicted, the trial court in imposing
> sentence shall specifically grant credit against the sentence for such time served in
> jail prior to sentencing.

*Id.* Typically, the time Petitioner spent in jail following his arraignment, but before his sentence
would be credited against the sentence that is ultimately imposed. That result is compelled by the
statute cited above. *People v. Seiders*, 686 N.W. 2d 821, 824 (Mich. Ct. App. 2004) ("[T]he
sentencing credit provision in MCL 769.11b is mandatory . . . ."). But it is only required for a
person who is held in jail because "he has been '*denied or unable to furnish bond*.'" *Id.* (emphasis
in original). A parolee who is arrested for a new criminal offense, however, is not held because
he has been denied or is unable to furnish bond; "he is held on a parole detainer . . . ." *Id.* at 823.
That does not mean he is denied credit for the time he is detained. It means that the "credit may
only be applied to the sentence for which the parole is granted." *Id.* (citing Mich. Comp. Laws
§ 791.238(2)). That result is logical because "[a] parolee who is sentenced for a crime committed
while on parole must serve the remainder of the term imposed for the previous offense before he
serves the term imposed for the subsequent offense." *Id* at 824, citing Mich. Comp. Laws
§ 768.7a(2).

After the judge announced Petitioner's sentence, Petitioner moved to withdraw his
plea based on the claim that his plea was not voluntary because Petitioner was not aware of the
consequences—he was not aware that his felony-firearm sentence would not be reduced by the

6

time he had served since his arraignment. Petitioner also argued that his counsel rendered

ineffective assistance for failing to advise him regarding the unavailability of credit for time served

against the felony firearm sentence.

The trial court denied relief. The court was not swayed by Petitioner's sworn claim

that he relied on the judge's statement at the plea hearing. Specifically, the judge stated: "Well,

you know, I don't have a real high opinion of Mr. Mitchell's veracity." (Mot. Hr'g Tr., ECF No.

6-12, PageID.314.) Petitioner sought leave to appeal in the Michigan Court of Appeals and the

Michigan Supreme Court. On April 23, 2019, the court of appeals denied relief "for lack of merit

in the grounds presented." (Mich. Ct. App. Order, ECF No. 6-13, PageID.319.) The supreme

court likewise denied relief on September 10, 2019. (Mich. Order, ECF No. 6-14, PageID.404.)

This petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court

convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–

94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.    Was Petitioner's plea voluntary and knowing

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find that a guilty plea is constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  Petitioner does not contend he is incompetent, and Petitioner had adequate notice of the charges against him.

The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  Petitioner does not argue that his plea was induced by threats or that his will was otherwise overborne.

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397

10

U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).   Petitioner's attack focuses on this requirement.   He contends that he did not truly understand the consequences of his plea—because the court misrepresented them—and that he was not properly advised—because his counsel did not correct the misrepresentation.

Whether this claim is couched in terms of a direct constitutional violation or in terms of ineffective assistance of counsel, Petitioner must show that he was prejudiced by the misstatement or failure to properly advise him of the consequences of his plea with regard to credit for time served.   *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (entitlement to habeas relief requires showing that any constitutional error "had substantial and injurious effect or influence" on conviction and that the error resulted in "actual prejudice" (quotation marks omitted).[2]   Applying the "substantial and injurious effect or influence" standard in the plea context—for a violation of Rule 11, not of due process, but the same standard—the Supreme Court has stated that the defendant who seeks relief "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Petitioner insists he would have never entered his plea if he had known the true state of affairs regarding credit for time served.  (Pet'r's Appl. for Leave to Appeal, ECF No. 6-

---

[2] In *Ruelas v. Wolfenbarger*, 580 F.3d 403, 410 (6th Cir. 2009), the Sixth Circuit Court of Appeals concluded that a determination that a guilty plea was involuntary is subject to harmless error analysis under *Brecht*.

14, PageID.407) ("If I was not going to get my jail time credit I would not have took the cop.").
The trial court judge flatly rejected Petitioner's contentions that counsel never advised Petitioner
regarding credit for time served and that Petitioner relied on and his plea depended on the trial
judge's statement at the hearing regarding credit for time served.  As noted above, the judge stated:

> I don't have a real high opinion of Mr. Mitchell's veracity. . . . [S]ometimes when
> he said his name was Jerry Lee [sic] Mitchell, if I didn't already know that, I would
> question whether that was his name.

(Mot. Hr'g Tr., ECF No. 6-13, PageID.397.)

The trial judge's finding that Petitioner would have entered his plea even if he had
been properly advised regarding credit for time served is presumed correct.  Petitioner can
overcome that presumption with clear and convincing evidence.  He offers nothing more than the
affidavit statements that the trial judge rejected as incredible.

Moreover, the trial judge's conclusion regarding Petitioner's credibility is well-
supported by the record.  Petitioner proposes that he would have never pleaded guilty if he thought
he would not be getting credit for time served against his felony-firearm sentence.  That suggestion
is belied by the fact that Petitioner had reviewed, accepted, and signed the prosecution's offer—
an offer that said nothing about credit for time served—before the judge made the misstatement
regarding credit at the plea hearing.  That suggestion is also belied by the fact that Petitioner never
raised the issue at his sentencing hearing, even after the sentencing judge indicated Petitioner
would be receiving no credit against his felony-firearm sentence for time served.  Indeed, Petitioner
did not raise the issue for many months after his sentencing.

Petitioner's carefully worded affidavit declines to state one significant fact;
Petitioner never indicates that he did not know that he could not receive credit against his felony-
firearm sentence because of his parole status.  That is certainly not dispositive, but it is interesting.

Petitioner was no stranger to criminal prosecutions or pleas when he entered his plea to the second-degree murder charge.

Finally, if the circumstances were as Petitioner swears they were—if Petitioner went into the plea hearing with no idea regarding credit for time served, if he was on the fence about whether to go forward and enter the negotiated plea, and if the judge's statement regarding credit for time served tipped the scale in favor of entering his plea—Petitioner's decision-making defies logic.  First, the fact that Petitioner did not get credit for time served against his felony-firearm sentence did not mean that Petitioner did not get credit.  The time Petitioner served from his arraignment until he was sentenced for second-degree murder was credited against his parole sentences.  In fact, Petitioner was discharged from two of his parole sentences because of the time he spent in jail awaiting trial for the present charges.  *See* https://mdocweb.state.mi.us/otis2/otis2 profile.aspx?mdocNumber=752248 (visited July 19, 2021).  Because Petitioner received credit against his parole sentences, his maximum discharge date, which is determined by combining all of his maximum sentences, in sequence if they are consecutive, was reduced.  Whether Petitioner received the credit against his parole sentences or the new felony-firearm sentence, his maximum discharge date would remain the same.

But whether the credit was applied to the parole sentences or the new felony-firearm sentence would make a difference with regard to Petitioner's early release date, which is determined by combining Petitioner's minimum sentences, in sequence if they are consecutive. Applying the credit against Petitioner's parole sentence was of no benefit with regard to Petitioner's earliest release date because he had already completed those minimums before he was paroled.  Applying the credit to Petitioner's felony-firearm sentence, however, would advance Petitioner's earliest release date day for day.  Thus, if circumstances were as Petitioner described,

13

it is certainly not ridiculous to suggest that where the credit was applied would matter to Petitioner. But it could not have mattered much.

The judge never told Petitioner he would receive credit for the time he served while he was awaiting trial, he told Petitioner he would receive credit for the time he was awaiting sentencing.    (Plea Tr., ECF No. 6-10, PageID.289) (So, for however long you've been in jail awaiting sentence [sic], those days will go to the two years for the mandatory felony firearm count and not the nineteen to forty."). Petitioner entered his plea on May 15, 2017; he was sentenced on June 9, 2017.  Petitioner awaited sentence for 25 days.  If the circumstances were as Petitioner represents, everything would be exactly the same with regard to his maximum discharge date but his earliest release date would be May 14, 2038, instead of June 8, 2038.  And Petitioner would have this Court believe that those 25 days were so precious to him that he would have preferred to endure a significant risk of life imprisonment without parole, a substantial risk of multiple life sentences, and a near certainty of 3 or 4 mandatory 25-year minimum sentences that could have been ordered to be consecutive, providing a potential 50-year minimum.  Moreover, no matter what, Petitioner's parole status would have precluded any credit against his new sentences for the time he spent awaiting trial or sentencing.

Petitioner claims his plea was involuntary and unknowing either because of ineffective assistance of counsel or the trial court misleading Petitioner with regard to the consequences of his plea.  Both claims require a showing of prejudice.  Both claims require Petitioner to establish that if he had properly understood the consequences of his plea he would have insisted on proceeding to trial.  Petitioner baldly claims that is the case.  The trial judge found that claim to be incredible and refused to permit Petitioner to withdraw his plea.  The state court's factual determinations are entirely reasonable on this record and its legal conclusions are neither

14

contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, for the same reasons I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing

of a denial of a constitutional right, I also conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:      August 25, 2021                                        /s/ *Maarten Vermaat*
                                                                                              Maarten Vermaat
                                                                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).